UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE MANUEL RIVERA RIVERA,

Petitioner(s),

v.

WARDEN/FACILITY ADMINISTRATOR,

Respondent(s).

CASE NO. C26-3544-KKE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by Immigration and Customs Enforcement ("ICE") since July 2026, and an immigration judge ("IJ") denied bond because she found that Petitioner was a flight risk. Because the factors considered by the IJ do not rationally bear on Petitioner's likelihood to appear for immigration proceedings, the Court finds that the IJ abused her discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner José Manuel Rivera Rivera, a native and citizen of Mexico, entered the United States before March 2004. Dkt. No. 7 ¶¶ 4–5; Dkt. No. 2 at 3. In a sworn declaration filed with his petition, Petitioner states that he "entered the United States through lawful inspection on a visa" in 2000. Dkt. No. 2 at 3. According to the declaration of United States Department of Homeland Security ("DHS") Officer Andre Ouk, Petitioner "entered the United States on an unknown date

and time, at an unknown location, without being admitted or paroled." Dkt. No. 7 ¶ 4. After entering the country, Petitioner lived with his wife in Juneau, Alaska, where their daughter and first son were born in 2002 and 2003, respectively. *See* Dkt. No. 2 at 3, 5, 9, 11; Dkt. No. 12-1 at 15–17.

On March 23, 2004, ICE encountered and detained Petitioner in Juneau, Alaska. Dkt. No. 7 ¶¶ 5–6. Petitioner was served with a Notice to Appear ("NTA") and placed in immigration proceedings. *Id.* The next day, March 24, 2004, Petitioner was released on bond. *Id.* ¶ 7. According to Officer Ouk's declaration, "Petitioner's immigrations cases were terminated" on May 24, 2004, "because Petitioner had departed the United States." *Id.* ¶ 8. The record is ambiguous as to the circumstances surrounding Petitioner's departure. *See* Dkt. No. 7 ¶¶ 7–8; *see also* Dkt. No. 8-2 at 02:56 to 03:55, 08:26 to 11:00.

Petitioner reentered the United States shortly thereafter. Dkt. No. 12 at 4; *see* Dkt. No. 7 ¶ 9. In a sworn declaration filed with his traverse, Petitioner states that he "returned due to the medical condition of [his] seven-month-old infant son … who had complications from Opitz syndrome." Dkt. No. 12 at 4; *see* Dkt. No. 12-1 at 15–18. On June 24, 20024, Petitioner's infant son was hospitalized for treatment at Bartlett Regional Hospital in Juneau, Alaska, and died from complications on June 27, 2004. Dkt. No. 12-1 at 15–17. Petitioner's declaration explains that his "return in 2004 was due to this family tragedy and to support [his] family"—Petitioner was present with his wife during their son's hospitalization, and he made the funeral arrangements after his death. Dkt. No. 12 at 4; *see* Dkt. No. 12-1 at 15–18.

Petitioner remained in Alaska after the death of his son. For over two decades, Petitioner resided with his family at the same Juneau address. Dkt. No. 2 at 3, 5; *see id.* at 44–45, 48–50, 56–63. Petitioner obtained an Alaska driver's license, purchased cars, worked and paid taxes and his bills. *Id.* at 3, 43–50, 52, 54–63. Petitioner's second son was born in Juneau in 2009. *Id.* at

10. Petitioner and his family were active members of a Juneau church where Petitioner's daughter and second son were both baptized. *Id.* at 10, 98–99. Attached to his sworn declaration in support of his petition (Dkt. No. 2), Petitioner submitted numerous letters of support from family, friends, neighbors, coworkers, and employers in Juneau; they describe Petitioner as a well-established, trusted, and productive member of his community and a relied-upon member of his family. *Id.* at 65–99.

In July 2007, Petitioner pleaded guilty to misdemeanor disorderly conduct, for which he was sentenced to an 85-day suspended sentence, 40 hours of community service, a fine, and one year of probation. Dkt. No. 12-1 at 8–9; *see* Dkt. No. 7 ¶ 9. Petitioner has no other criminal history.

On July 29, 2026, ICE detained Petitioner while he was on his way to work in Juneau. Dkt. No. 2 at 1–2; Dkt. No. 7 ¶ 10. ICE detained Petitioner without a warrant, order of removal, NTA, or any other process. *See* Dkt. No. 2 at 1–2; Dkt. No. 7 ¶¶ 10–14. According to the declaration of Officer Ouk, ICE detained Petitioner on the same day it "was notified by Border Patrol that Petitioner was in Alaska without any forms of status or immigration benefit," but it was not until several days later, on August 2, 2026, that ICE "confirmed Petitioner had no pending or approved immigration applications" and "issued a warrant of arrest for Petitioner." Dkt. No. 7 ¶¶ 10–11. After he was detained, ICE first held Petitioner in "the Lemon Creek Juneau facility," before transferring him to "the Anchorage Jail" on July 30, 2026. *Id.* ¶¶ 12–13. On August 2, 2026, Petitioner was served with an NTA and placed in immigration proceedings. *Id.* ¶ 14. Petitioner was then transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, on August 4, 2026. *Id.* ¶ 15; Dkt. No. 2 at 1.

Petitioner appeared before an IJ for a bond hearing on September 10, 2026. Dkt. No. 7 ¶ 16. At the hearing, Petitioner presented evidence to the IJ regarding his personal and familial

ties to the United States and Juneau, Alaska. Among other things, Petitioner presented evidence that he is married and has two children who are United States citizens, one of whom, his adult daughter, is prepared to act as his financial sponsor; he has lived with his family in the same Juneau home, which he and his wife own, since June 2004, and he will return to that home upon release on bond; he owns three vehicles; he has worked for the same general contractor in Juneau for sixteen years and pays his income taxes; and his family depends on him for material and emotional support, as do his friends and neighbors. Dkt. No. 2 at 9–99; Dkt. No. 8-2. Petitioner requested a bond of $20,000. Dkt. No. 8-2 at 11:02 to 11:10.

At the bond hearing, the Government presented as evidence a copy of Petitioner's Form I-213, "Record of Deportable/Inadmissible Alien." Dkt. No. 8-2 at 06:23 to 06:48. That document does not appear in the record before this Court. The Government argued that Petitioner's 2004 reentry and his "speculative future eligibility for relief" from removal rendered Petitioner a flight risk. *Id.* at 06:54 to 08:22.[1]

The IJ found that Petitioner was not a danger to the community. Dkt. No. 8-2 at 11:16 to 11:25; *see* Dkt. No. 8-1 at 2. However, the IJ found that Petitioner had not "met his burden of proof to show he is not a flight risk." Dkt. No. 8-2 at 11:26 to 11:31. The IJ based her flight-risk finding on Petitioner's 2004 reentry into the country, unspecified pre-2004 reentries into the country, and his "very speculative" cancellation of removal application. *Id.* at 11:13 to 12:13. The IJ discussed no other evidence with respect to her determination that Petitioner was a flight risk. *Id.* And on that basis, the IJ denied Petitioner's release on bond. *Id.*; Dkt. No. 8-1.

[1] The Government also referenced Petitioner's 2007 misdemeanor disorderly conduct conviction, but conceded that it was "older" and not "the more pressing concern." Dkt. No. 8-2 at 06:54 to 07:10. The IJ found that Petitioner was not a danger to the community and did not mention his conviction in making her findings with respect to flight risk. *Id.* at 11:16 to 12:13.

On September 21, 2026, Petitioner filed an application for cancellation of removal and adjustment of status. Dkt. No. 7 ¶¶ 17–18. On the same day, appearing *pro se*, Petitioner filed the present petition for writ of habeas corpus. Dkt. No. 1. Petitioner remains in detention at the NWIPC. Dkt. No. 12 at 1; *see* Dkt. No. 7 ¶¶ 15–19.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Petitioner received a bond hearing before an IJ on September 10, 2026. The question presented in the current habeas petition is whether the bond hearing and resulting bond decision pass constitutional muster.[2]

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJs consider the so-called "*Guerra* factors":

---

[2] The Government's return argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits. Dkt. No. 6 at 5–7. The Court waives prudential exhaustion in light of the irreparable injury that results from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

First, the parties dispute whether the IJ applied the correct burden of proof. At the hearing, the IJ put the burden on Petitioner "to show he is not a flight risk." Dkt. No. 8-2 at 11:26 to 11:31. According to Petitioner, the IJ erred because due process and Ninth Circuit precedent require "placement of the burden of proof on the Government by clear and convincing evidence." Dkt. No. 11 at 8–9 (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)). The Government contends that the IJ's allocation of the burden was appropriate because,"[a]t an initial hearing before an IJ for a noncitizen detained under [8 U.S.C.] § 1226(a), the noncitizen bears the burden of establishing that" he is not a danger to the community or a flight risk. Dkt. No. 6 at 2 (citing *In re Guerra*, 24 I. & N. Dec. at 38).

The Court is not convinced that the IJ's allocation of the burden to Plaintiff was appropriate here. "Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing," and "[t]he Supreme Court also has not clarified the burden." *Segura Serrano v. Scott*, No. 2:26-CV-01268-LK, 2026 WL 1674357, at *6 (W.D. Wash. May 26, 2026). The circuit courts have split over the question, *id.* at *6–7 (collecting cases), and the Ninth Circuit has declined to require the Government to bear the burden of proof by clear and convincing evidence at a second bond hearing under Section 1226(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203 (9th Cir. 2022). However, the circumstances of this case differ from those addressed by *Rodriguez Diaz*.

Here, Petitioner was previously detained by ICE and then released on bond in 2004. "[W]hen the government has previously determined that a noncitizen did not pose a flight risk or danger, this court and many other courts have found that due process requires the government to bear the burden of establishing that changed circumstances warrant the noncitizen's detention." *Chen v. Chestnut*, No. 26-cv-04485, 2026 WL 2771765, at *1 (E.D. Cal. Sep. 17, 2026) (collecting cases); *see Caglar v. Wamsley*, No. 2:26-CV-00787-TMC, 2026 WL 1123515, at *5 (W.D. Wash. Apr. 24, 2026) ("While in initial bond hearings under § 1226(a) the noncitizen must prove their entitlement to bond, this Court agrees with other district courts in this Circuit that in the context of re-detention, the burden must be on the government to justify re-detention by clear and convincing evidence."). The record shows that after Petitioner was released on bond in 2004, he departed and then reentered the country; but it is ambiguous with respect to the circumstances of his departure—for example, whether it was under an order of voluntary departure or otherwise—and the Government does not argue that Petitioner's departure was a violation of his bond. The record is clear, however, that from June 2004 until he was detained by ICE in July 2026, Petitioner lived continuously and openly in Juneau, Alaska.

Even assuming that Petitioner bore the burden of proving he was not a flight risk at the bond hearing, the Court finds that the IJ abused her discretion in denying bond. The IJ based her flight-risk finding solely upon the fact that Petitioner had reentered the country in 2004 (and at unspecified points before 2004) and the IJ's estimation that relief from removal was "very speculative." But this basis is legally insufficient. "A decades-old history of simply entering the United States without permission, or trying to, has been held to be 'legally insufficient to establish a current flight risk that is unmanageable by release on bond.'" *Poot v. Mullin*, No. 26-CV-3321-CTS, 2026 WL 2659590, at *8 (C.D. Cal. Sept. 9, 2026) (quoting *Gonzalez Reyes v. Rios*, No. EDCV 26-3830, 2026 WL 2190830, at *5 (C.D. Cal. July 28, 2026)); *Soriano v. Hernandez*, 830

F. Supp. 3d 1071, 1080 (W.D. Wash. 2026); *Miranda v. Hernandez*, No. 26-CV-00906-JNW, 2026 WL 1328227, at *4 (W.D. Wash. May 13, 2026). The IJ provided "no explanation why an unauthorized reentry into the United States [almost] 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee," and "[c]oncluding that an unlawful entry from [almost] 25 years ago … automatically weighs in favor of finding flight risk lacks any objective rationale." *Soriano*, 830 F. Supp. 3d at 1080. Similarly, the IJ provided no rational connection between Petitioner's "speculative" relief and flight risk. "[T]he fact of a removal order—or the lack of potential forms of relief for a potential future removal order—is not sufficient by itself to deny bond or establish flight risk." *Segura Serrano*, 2026 WL 1674357, at *8 (cleaned up); *Soriano*, 830 F. Supp. 3d at 1081. This is particularly so where, as here, the IJ "provide[s] no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak" or speculative. *Soriano*, 830 F. Supp. 3d at 1081; *Poot*, 2026 WL 2659590, at *9.

The IJ also failed to engage with the evidence before her that was highly relevant to the *Guerra* factors—evidence such as Petitioner's decades-long residence in the United States, his extensive family ties to the country, that Petitioner's children are United States citizens which may entitle him to reside permanently in the country, his record of lawful employment, and his record of complying with court orders. While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785.

Because the Court finds that the IJ did not apply the correct legal standard and the record unequivocally contradicts the IJ's flight-risk finding, the Court concludes that the IJ abused her

discretion in denying bond. Petitioner's continued detention would serve no immigration purpose, and the Court will order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court further ORDERS:

(1) The Government shall release Petitioner no later than October 17, 2026, on reasonable conditions of supervision.

(2) The Government shall file a status report no later than October 19, 2026, confirming compliance with this order.

(3) Petitioner shall not be re-detained, absent urgent circumstances, without pre-deprivation notice and an opportunity to be heard in front of an Immigration Judge. At such hearing, the Government shall bear the burden of proof by clear and convincing evidence.

Dated this 16th day of October, 2026.

Kymberly K. Evanson
United States District Judge